UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LISA TERNES, *et al.*,

    *Plaintiffs*,

v.

C.R. HOME IMPROVEMENT,

    *Defendant*.

Civil Action No. 24-1277 (SLS)

Judge Sparkle L. Sooknanan

## MEMORANDUM OPINION

This case arises from a failed home renovation project. In 2021, Lisa Ternes and Jay Jemail contracted with C.R. Home Improvement to renovate their home in Northeast D.C. The Defendants failed to complete the work as promised, prompting this lawsuit alleging violations of the D.C. Consumer Protection Procedures Act (DCCPPA), fraudulent misrepresentation, negligent misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, and negligence. When the Defendant failed to answer, the Clerk of Court entered default. Before the Court is the Plaintiffs' Motion for Default Judgment. After scrutinizing the record, the Court grants the motion in part, awarding compensatory damages. The Court denies the Plaintiffs' request for consequential damages, non-economic damages, and attorney's fees, as they have not submitted sufficient information for the Court to make the necessary determinations.

## BACKGROUND

### A.   Factual Background

The Court draws the facts, accepted as true, from the Plaintiffs' "pleadings, motion for default judgment, and various attachments." *Omni Bridgeway Ltd. v. Ministry of Infrastructure & Energy of the Republic of Albania*, 23-cv-1938, 2025 WL 506570, at *1 (D.D.C. Feb. 14, 2025).

Ana Rivera is the co-owner of C.R. Home Improvement, a construction company headquartered and licensed in Maryland. Compl. ¶ 9– 10, ECF No. 1. On February 8, 2021, Ms. Rivera met Ms. Ternes and her mother, Ms. Jemail, to discuss renovating their home at 804 Maryland Avenue NE, in Washington, D.C. *Id.* ¶¶ 13, 18. At the meeting, Ms. Rivera walked Ms. Ternes through the "nature, scope, and quality" of the renovations that C.R. Home Improvement could offer. *Id.* ¶ 19. She boasted of the company's success, telling Ms. Ternes that C.R. Home Improvement was "engaged in renovation projects on numerous historical homes" in Capitol Hill and had "very satisfied" customers. *Id.* ¶ 22. She added that the company had "significant experience" in the renovation of historical homes and the "capacity to handle such projects." *Id.* ¶ 23. She said C.R. Home Employment had "two structural engineers," *id.* ¶ 25, who could renovate the home "in accordance with D.C. Residential Code," *id.* ¶ 27, within twelve weeks, *id.* ¶ 29. Ms. Rivera did not disclose that her company was neither registered to do business in D.C., nor licensed to perform home construction services there. *Id.* ¶¶ 30–31.

The Plaintiffs now consider most of Ms. Rivera's statements during the meeting to be "false" and designed to "induce" them into signing a contract with C.R. Home Improvement. *Id.* ¶¶ 25, 27. They did so on February 18, 2021, agreeing to pay $77,550 "for the interior renovation of the subject property, along with small exterior items." *Id.* ¶ 32. A copy of the contract provides detailed descriptions of the work (e.g., "[i]nstall carpet staircase"), Mot. Default J., Ex. C at 1, ECF No. 6-4, and outlines a payment schedule, *id.* at 4. But the contract was only the first of many agreements. The Plaintiffs signed their first additional "change order" with the Defendant on March 11, 2021, totaling $15,850, which listed tasks such as "exterior painting" and the "renovation of a staircase." Compl. ¶ 43. They signed a second and a third change order on April 13, 2021, agreeing to pay $4,480 for "exterior renovation" and $16,500 for a "full renovation

of the third[-]floor bathroom." *Id.* ¶ 45. In early May 2021, the Plaintiffs noticed that the Defendant was "failing to complete the work as promised or was otherwise engaging in substandard work[.]" *Id.* ¶ 47. The Plaintiffs notified the Defendant, who attempted to "placate" them, "telling them the damages would be addressed and fixed." *Id.* ¶ 48. According to the Complaint, this began "a months-long process of additional, compounding misrepresentations by the Defendant[.]" *Id.* ¶ 48.

Despite the Plaintiffs' concerns, they continued to authorize more payments to C.R. Home Improvement, endorsing a fourth change order on May 11, 2021, for $14,682 to cover tasks like "light installation" and "brick wall repairs," *id.* ¶ 49, and a fifth on May 28, 2021, for $7,950 to pay for items like "additional light installation" and "bathroom plumbing," *id.* ¶ 53. On May 31, 2021, as "follow up to an in-person meeting," Ms. Jemail sent a letter to Ms. Rivera outlining "a number of workmanship errors, quality problems, and defects created through the Defendant's renovation." *Id.* ¶ 54. The record contains no evidence that Ms. Rivera responded. Still the Plaintiffs pushed on, signing a sixth change order on June 4, 2021, for $12,000 to cover "construction of a first-floor water closet," *id.* ¶ 55, and another on August 7, 2021, for $2,200, for "additional work," *id.* ¶ 56. In all, the Plaintiffs signed seven change orders totaling $73,662.

On December 10, 2021, Ms. Rivera emailed Ms. Jemail to tell her that "only a few items remained to be completed." *Id.* ¶ 60. Three days later, the Plaintiffs visited the property—almost ten months after they signed the contract—and found "work that had not been finished, defects present in the house, and breaches of the prior agreements[.]" *Id.* ¶ 62; *see also* ¶ 63 (listing specifics such as "[t]he main bathroom was lacking tiling"). On June 11, 2022, Ms. Jemail met with one of C.R. Home Improvement's employees, Ramon Batres, to go over the many unfinished projects in the home. *Id.* ¶ 68. She then sent a notice to C.R. Home Improvement identifying the issues. *Id.* (e.g. "flooring done improperly"). Ms. Rivera again "assured" her that the "items would

3

be corrected promptly." *Id.* ¶ 69. On September 20, 2022, Ms. Jemail emailed Ms. Rivera to express concern that she was not receiving authentic reports of the project's progress and that the home was "not habitable." *Id.* ¶ 70–71. Ms. Rivera responded that she "was not even aware that her company was still working" on the Plaintiffs' home. *Id.* ¶ 72.

In November 2022, the Plaintiffs again visited the house. *Id.* ¶¶ 32, 76. They saw "myriad defects" and "critical work" that had "not been performed[.]" *Id.* ¶ 76. When Ms. Jemail reached out to Ms. Rivera to reassert her concerns, Ms. Rivera replied that she was "so done" with the project and "tired of [Ms. Jemail] always accusing [the Defendant of] of doing things wrong." *Id.* ¶ 77. The Plaintiffs filed a "stop work" order on November 14, 2022, alleging that the home had become "defective and dangerous[.]" *Id.* ¶ 78. Ms. Jemail, who was funding the project for her daughter, asserts in an affidavit that she paid C.R. Home Improvement a total of $169,492.50 over the course of the construction project. *See* Mot. Default J., Aff. of Jay Jemail ¶ 7, ECF No. 6-9. Left with a defective, unfinished house, the Plaintiffs had to hire contractors to "remediate and repair" the damages. Compl. ¶ 83. The Complaint states that Ms. Ternes paid three contractors to complete the work: $4,659 to Power-Up Builders, *id.* ¶ 85, $43,784.62 to Keil Construction, *id.* ¶ 88, and $1,264 to Cropp Metcalfe, *id.* ¶ 90. Ms. Ternes also had to "reduce and ultimately suspend" her small business, which led to $171,415.41 in lost revenue. Compl. ¶ 92; *see also* Mot. Default J., Aff. of Lisa Ternes ¶ 34, ECF No. 6–10. The Plaintiffs have also suffered "serious and ongoing mental and emotional distress, inconvenience, and other non-economic damages, which will continue into the future." Compl. ¶ 95.

B.     **Procedural Background**

The Plaintiffs filed this Complaint on May 1, 2024, alleging six causes of action: (1) violations of the DCCPPA, (2) fraudulent misrepresentation, (3) negligent misrepresentation,

(4) breach of contract, (5) breach of the implied covenant of good faith and fair dealing, and (6) negligence. *See id.* ¶¶ 96–154. The Defendant was served on May 23, 2024. *See* Return of Service Aff., ECF No. 3 at 2. On June 20, 2024, with silence from the Defendant, the Plaintiffs requested that the Clerk of Court enter default. *See* Pls.' Aff. of Default, ECF No. 4. The Clerk of Court entered default the next day. *See* Clerk's Entry of Default, ECF No. 5. The Plaintiffs then filed a Motion for Default Judgment on November 12, 2024, requesting $219,200.12 in compensatory damages, $171,415.41 in consequential damages, $100,000 in noneconomic damages, and attorney's fees and costs in an amount "to be determined." Mot. Default J. at 21. In total the Plaintiffs seek $490,615.53 in damages, plus attorney's fees. *See id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 provides for "default judgments, which safeguard plaintiffs when the adversary process has been halted because of an essentially unresponsive party." *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (cleaned up). It is not a decision that courts take lightly. *See Boland v. Bur Bros. Masonry*, No 13-cv-542, 2013 WL 4507849, at *1 (D.D.C. Aug. 23, 2013) (noting that courts "prefer to resolve disputes on their merits"); *see also Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980) (observing that "[d]efault judgments are not favored by modern courts, perhaps because it seems inherently unfair to use the court's power to enter and enforce judgments as a penalty for delays in filing").

The entry of default under Rule 55 establishes the defendant's liability. *See AARP v. Sycle*, 991 F. Supp. 2d 234, 238 (D.D.C.2014) ("[The] defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." (cleaned up)). In this way, Rule 55 ensures that "the diligent party" in a lawsuit is "protected" if he encounters an "interminable delay and continued uncertainty as to his rights." *H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970). Whether default judgment is appropriate is "committed to the

sound discretion of the trial court." *Jackson*, 636 F.2d at 835. To meet the definition of "totally unresponsive," the defendant's default must be "plainly willful, reflected by its failure to respond to the summons and complaint, the entry of default, or the motion for default judgment." *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008) (citing *Gutierrez v. Berg Contracting Inc.*, No. 99-cv-3044, 2000 WL 331721, at *1 (D.D.C. Mar. 20, 2000)). When the defaulting party has remained silent, Rule 55's standard is "satisfied." *Id.*

## DISCUSSION

The Court's decision to grant a default judgment in the event of an absent defendant is "not automatic." *Mwani*, 417 F.3d at 6. The Court "must satisfy itself that it has . . . subject-matter jurisdiction over the claims, personal jurisdiction over the absent parties, and that the plaintiff has established its right to relief under federal or state law." *Omni Bridgeway Ltd.*, 2025 WL 506570, at *4. Here, the Plaintiffs have pled sufficient facts to satisfy jurisdiction and to raise a reasonable inference that the Defendant's silence is "willful and deliberate." *Lu v. Lezell*, No. 11-cv-1815, 2013 WL 12183952, at *1 (D.D.C. July 19, 2013). Considering the Defendant's "unresponsiveness" and the "adequacy of the . . . Complaint," *SEC v. Nielson*, No. 18-cv-1217, 2020 WL 9439395, at *1 (D.D.C. Feb. 13, 2020) (cleaned up), the Court finds default judgment proper and awards the Plaintiffs compensatory damages. But the Court denies the Plaintiffs' request for consequential damages, non-economic damages, and attorney's fees.

### A.    Rule 55 Requirements

A plaintiff seeking default judgment must: (1) request that the Clerk of the Court enter default based on the defendant's failure to respond and (2) file a motion for default judgment. *See Omni Bridgeway Ltd.*, 2025 WL 506570, at *3; *see also* Fed. R. Civ. P. 55. The Plaintiffs have completed both steps, *see* ECF No. 4, 7, so this threshold requirement is satisfied.

**B.      Jurisdiction**

**1.      Subject Matter Jurisdiction**

Even when a defendant has not answered the plaintiff's complaint, a court still has an "'affirmative obligation' to ensure that it has subject matter jurisdiction over the suit." *Redes Andinas de Comunicaciones S.R.L. v. Republic of Peru*, No. 22-cv-3631, 2024 WL 4286107, at *2 (D.D.C. Sept. 24, 2024) (quoting *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996)). The subject-matter jurisdiction of the federal district courts is "limited and is set forth generally at 28 U.S.C. §§ 1331 and 1332." *Flowers v. Paypal Prepaid*, No. 24-cv-3021, 2024 WL 4817136, at *1 (D.D.C. Nov. 15, 2024). Here, the Plaintiffs invoke Section 1332, which requires the parties to be of "diverse citizenship" and the amount in controversy to "exceed[] the sum or value of $75,000, exclusive of interest and costs." *Id.* (citing 28 U.S.C. § 1332(a)).

The Plaintiffs have satisfied the requirements for diversity jurisdiction. As the Complaint details, Ms. Ternes is a resident of the District of Columbia; Ms. Jemail is a resident of Pennsylvania; and the Defendant C.R. Home Improvement is a corporation with its principal place of business in the state of Maryland. *See* Compl. ¶¶ 1–3. The Defendant's website supports this, stating that C.R. Home Improvement is a "licensed general contractor in Maryland." *See Home Advisor, Angie's List & Better Business Bureau Achievements*, C.R. Home Improvement, https://perma.cc/79CU-3324. And the Plaintiffs seek just under $500,000 in damages, which far exceeds the baseline amount in controversy, *see* 28 U.S.C. § 1332(a). The Court thus has subject matter jurisdiction over the Plaintiffs' claims.[1]

---

[1] In their Complaint, the Plaintiffs allege that this Court has supplemental jurisdiction over their state-law claims under 28 U.S.C. § 1367. *See* Compl. ¶ 5. Given that the requirements of diversity jurisdiction are satisfied, supplemental jurisdiction is unnecessary.

### 2. Personal Jurisdiction

A Court also needs to "satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant." *Mwani*, 417 F.3d at 6. In the case of default judgment, the plaintiff need only raise a prima facie case of personal jurisdiction. *See id.* at 7 (reversing a district court's dismissal for lack of personal jurisdiction under the preponderance of evidence standard). To establish personal jurisdiction over a non-resident defendant, courts in this District must "engage in a two-part inquiry," asking (1) whether jurisdiction is proper under the District of Columbia's long-arm statute and (2) whether the exercise of personal jurisdiction comports with the constitutional requirement of due process. *Buholtz v. Sogamoso*, No. 17-cv-1766, 2019 WL 13225374, at *1 (D.D.C. Jan. 10, 2019).

Section 13-423 of D.C.'s long-arm statute allows courts to exercise personal jurisdiction over out of state individuals based on their conduct in D.C. *See* D.C. Code Ann. § 13-423(a). Section 13-423(a)(1) allows a court to exercise personal jurisdiction over a claim that arises from a "person's transacting any business in the District of Columbia." *First Chicago Intern v. United Exch. Co.*, 836 F.2d 1375, 1377 (D.C. Cir. 1988) (quoting D.C. Code Ann. § 13- 423(a)(1)). The D.C. Circuit has said that Section 13-423(a)(1)'s requirements are "coextensive with the Constitution's due process limit." *Id.* This means that the Court may exercise specific jurisdiction if "there is a sufficient relationship between the gravamen of the complaint . . . and the District of Columbia, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *McLaughlin v. Hartford Life & Annuity Ins. Co.*, 299 F. Supp. 3d 115, 118 (D.D.C. 2017) (cleaned up). Some factors that courts use to determine whether a defendant transacts business in D.C. include whether it "perform[s]" any "aspect" of its work or "solicits"

8

work in D.C. *Env't Rsch. Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 811–12 (D.C. 1976).

The Plaintiffs ground this Court's personal jurisdiction in several provisions of D.C.'s long-arm statute—including the aforementioned "transacted business" aspect. Compl., ¶ 7. The record is indeed replete with contracts, work orders, and verbal representations that C.R. Home Improvement performs work in D.C. and solicits business in D.C. *See* Compl. ¶ 22 ("Ms. Rivera told Ms. Ternes that C.R. Home Improvement engaged in renovations on numerous historical homes in the Capitol Hill neighborhood of Washington, D.C."); *id.*, Ex. C at 1 (showing the contract between Ms. Ternes and C.R. Home Improvement, which notes that the "subject property" is located in Washington, D.C.). The Court is therefore satisfied that personal jurisdiction over C.R. Home Improvement is proper under both D.C.'s long-arm statute and the Constitution.

### C.     Right to Relief

Turning to the merits, a defaulting defendant is "deemed to admit every well-pleaded allegation in the complaint." *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002). But a well-pleaded complaint must include enough factual matter to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The Court finds five of the Plaintiffs' six causes of action to be adequately pled.[2]

---

[2] Given that the events giving rise to this suit occurred in the District of Columbia, that D.C.'s long-arm statute applies, and that D.C. is the Plaintiffs' preferred forum, the Court will assess the sufficiency of the Plaintiffs' claims under D.C. law.

### 1. Violations of the D.C. Consumer Protection Procedures Act

The Plaintiffs first raise causes of action under the DCCPPA. Compl. ¶¶ 96–108. A defendant violates the DCCPPA[3] when it "misrepresent[s] a material fact which has a tendency to mislead or fail[s] to state a material fact if such failure tends to mislead, whether or not a consumer is in fact misled, deceived or damaged thereby." *Athridge v. Aetna Cas. & Sur. Co.*, 351 F.3d 1166, 1175 (D.C. Cir. 2003) (citing D.C. Code §§ 28-3904(e)–(f)). Although the parties need not prove that they were "actually deceived by the practice," they cannot prove a violation by "point[ing] to statements that are . . . mere puffery." *E.M. v. Shady Grove Reprod. Sci. Ctr. P.C.*, 496 F. Supp. 3d 338, 409 (D.D.C. 2020) (cleaned up). Courts define puffery as "non-actionable exaggeration reasonably to be expected of a seller as to the degree of quality of his product, the truth or falsity of which cannot be precisely determined." *Scott v. Apple Inc.*, No. 23-cv-475, 2024 WL 4698706, at *7 (D.D.C. Nov. 6, 2024).

The Complaint includes many specific examples of misrepresentations by the Defendant that could lead a reasonable jury to conclude they are more than puffery. *See, e.g.*, Compl. ¶ 26 ("Ms. Rivera told Ms. Ternes that building permits were not needed for the work that they planned to do."); *id.* ¶ 29 ("Ms. Rivera told Ms. Ternes that the work would be completed within twelve [] weeks."); *id.* ¶ 101(b) ("[The] Defendant falsely represented . . . that [it] had certain certifications, accreditations, and experience that [it] did not have."). The Court is satisfied that the Plaintiffs have alleged enough facts on this claim.

---

[3] The DCCPPA includes a provision that defines the terms "consumer," "merchant," "goods and services," and "unfair or deceptive trade practice." *See* D.C. Code § 28-3901. The Court is satisfied that the Plaintiffs' Complaint pleads sufficient facts to meet these definitions.

### 2. Fraudulent Misrepresentation

The Plaintiffs next allege fraudulent misrepresentation. Compl. ¶¶ 109–114. A prima facie case of fraudulent misrepresentation requires: "(1) a false representation (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with intent to deceive, and (5) action [] taken in reliance upon the representation.'" *Rodriguez v. Lab. Corp. of AmericaHoldings*, 13 F. Supp. 3d 121, 128–29 (D.D.C.2014) (cleaned up). A false representation is defined as "an assertion that is not in accord with the facts." *Id.* at 129 (quoting *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 438–39 (D.C. 2013)).

The Plaintiffs have provided the Court with detailed descriptions of the Defendant's misrepresentations. *See, e.g.*, Compl. ¶ 111(a) ("C.R. Home Improvement advertised itself to [the] Plaintiffs as servicing Washington, [D.C.,] however, it failed to disclose . . . that it is not registered to do business in Washington, [D.C.]"); *id.* ¶ 111(b) ("Ms. Rivera falsely told Ms. Ternes that C.R. Home Improvement engaged in renovation projects on numerous historical homes in the Capitol Hill neighborhood of Washington, D.C., and that her customers were very satisfied with her work."). They have also pleaded sufficient facts for a reasonable jury to conclude that C.R. Home Improvement intended to deceive them. *See, e.g.*, Compl. ¶ 111 (noting that during an in-person meeting Ms. Rivera "falsely represented to Ms. Ternes that the proposed renovation and construction project would be completed within twelve [] weeks, a representation which was also expressed in writing in the final contract"). The Court finds this claim adequately pled as well.

### 3. Negligent Misrepresentation

The Plaintiffs also allege negligent misrepresentation. Compl. ¶¶ 115–123. Under D.C. law, a plaintiff alleging negligent misrepresentations or omissions must show "(1) the defendant made a false statement or omission of a fact, (2) the statement or omission was in violation of a

11

duty to exercise reasonable care, (3) the false statement or omission involved a material issue, and (4) the plaintiffs reasonably and to their detriment relied on the false information." *Regan v. Spicer HB, LLC*, 134 F. Supp. 3d 21, 38 (D.D.C. 2015) (quoting *Sundberg v. TTR Realty*, *LLC*, 109 A.3d 1123, 1131 (D.C.2015)). In this District, "elements of negligent misrepresentation claim are the same as those of a fraudulent misrepresentation claim, except a negligent misrepresentation claim does not include the state of mind requirements of fraud." *Regan*, 134 F. Supp. 3d at 38. Given that the standards for pleading fraudulent misrepresentation are met, the Court finds the lower standard for negligent misrepresentation satisfied as well.

### 4. Breach of Contract

Next, the Plaintiffs bring a breach of contract claim. Compl. ¶ 124–135. A prima facie case of breach of contract in D.C. requires: "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Inst. of Multidimensional Med. v. Metagenics, Inc.*, 635 F. Supp. 3d 6, 9 (D.D.C. 2022). Here, the Plaintiffs have adequately alleged that they entered a contract with the Defendant, compl. ¶ 125, that the Defendant breached the contract, *id.* ¶ 133, and that the breach resulted in damages, *id.* ¶ 135. This is sufficient at the default judgment stage.

### 5. Breach of the Implied Covenant of Good Faith and Fair Dealing

The Plaintiffs also allege a breach of the implied covenant of good faith and fair dealing. Compl. ¶¶ 136-144. The District of Columbia considers "every contract" to contain "an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract," i.e., "an implied covenant of good faith and fair dealing." *Himmelstein v. Comcast of the Dist.*, *L.L.C.*, 908 F. Supp. 2d 49, 53 (D.D.C. 2012) (citing *Hais v. Smith*, 547 A.2d 986, 987 (D.C. 1988)). Since the Plaintiffs have

presented a valid contract, the Court will imply the covenant of good faith and fair dealing. Whether the Plaintiffs have met the threshold for a showing of bad faith is a closer question. *See Allworth v. Howard Univ.*, 890 A.2d 194, 202 (D.C. 2006) ("Bad faith means more than mere negligence[.]" (cleaned up)). Although the Complaint includes ample allegations that the Defendant breached the contract, it does not allege bad faith. *See* Compl. ¶ 143 (alleging that the Defendant breached the covenant of good faith and fair dealing by "performing home renovations . . . with numerous material defects"). The Court therefore dismisses this claim without prejudice.

### 6. Negligence

Finally, the Plaintiffs bring a claim for negligence. Compl. ¶¶ 145-154. A plaintiff alleging negligence under D.C. law must establish three elements: "(1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; and (3) the defendant's breach proximately caused the plaintiff's harm." *Whiteru v. Wash. Metro. Area Transit Auth.*, 25 F.4th 1053, 1055 (D.C. Cir. 2022). Under District of Columbia law, the "question of proximate causation" is "at base one of foreseeability," and it is "ordinarily a question of fact for the jury." *Rieser v. D.C.*, 563 F.2d 462, 479–80 (D.C. Cir. 1977). All three requirements are met here. The Plaintiffs allege that the Defendant owed them a duty and breached that duty. *See* Compl. ¶¶ 145–154. And the Plaintiffs have presented enough facts for a reasonable jury to conclude that damage from the Defendant's inaction was foreseeable. *See, e.g.*, *id.* ¶ 154 ("As a direct and proximate result of Defendant's negligence, the Plaintiffs suffered substantial damages[.]"). The Plaintiffs' claim of negligence is therefore satisfied.

### D. Reward Amount

The Court now turns to the Plaintiffs' requested relief. While default establishes a silent defendant's liability, it "does not . . . establish liability for the amount of damage that the plaintiff

claims." *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 67 (D.D.C. 2011). Courts are therefore "required to make an independent determination of the sum to be awarded unless the amount of damages is certain." *Boland v. Providence Constr. Corp.*, 304 F.R.D. 31, 35 (D.D.C. 2014) (cleaned up). The moving party "must prove its entitlement to the amount of monetary damages requested using detailed affidavits or documentary evidence on which the court may rely." *Id.* at 36 (cleaned up). Courts have "considerable latitude in determining the amount of damages." *Id.* (cleaned up).

### 1. Compensatory Damages

The Plaintiffs allege that they are entitled to $219,200.12 in compensatory damages, based on two lump sums: $169,492.50 paid to C.R. Home Improvement and $49,707.62 paid for remedial construction costs. Mot. Default J. at 17. The Court agrees. The Plaintiffs submit detailed evidence of these payments. *See id.*, Ex. D, ECF No. 6-5 (photocopies of checks to C.R. Home Improvement totaling $167,137.50); *see also id.*, Ex. E, ECF No. 6-6 (depicting Zelle payments to C.R. Home Improvement totaling $2,355); *id.*, Ex. F, ECF No. 6-7 (showing payments for remedial construction totaling $56,307.62). The Court is satisfied that the Defendant's failure to carry out the home renovations resulted in damage. The Defendant had the opportunity to counter these allegations, but it chose not to do so. Accordingly, the Court grants the Plaintiffs' request for an award of $219,200.12 in compensatory damages.

### 2. Consequential Damages

The Plaintiffs also allege that they are entitled to $171,415.41 in lost income due to Ms. Ternes's inability to run her at-home business. Mot. Default J. at 9. In this District, consequential damages must be proven "with reasonable certainty, beyond mere speculative loss." *Klayman v. Jud. Watch, Inc.*, 255 F. Supp. 3d 161, 168 (D.D.C. 2017). This means that while the

Plaintiffs need not calculate the lost profits with "mathematical precision," they "must at least provide reasonable certainty that the party suffered calculable loss." *Id.* (cleaned up). The Plaintiffs have failed to meet that burden. As proof of lost profits, the Plaintiffs attach a generic "Profit and Loss" form listing Ms. Ternes's company's name ("Body Prosody") and costs and revenue associated with the business. *See* Mot. Default J., Ex. G, ECF No. 6-8. This alone does not provide the Court with "reasonable certainty" that nearly $200,000 in lost profits is warranted. *Klayman*, 255 F. Supp. 3d at 168. The Court therefore denies the request for consequential damages without prejudice. The Plaintiffs may submit additional evidence to support this claim.

### 3.     Noneconomic Damages

Next, the Plaintiffs seek $100,000 in non-economic damages. Mot. Default J. at 17. To obtain damages on a motion for default judgment, plaintiffs must provide "sufficient information for the Court to make the necessary determination on the amount of damages owed." *SNH Med. Off. Props. Tr. v. Healthy Eateries L.L.C.*, 325 F.R.D. 514, 519 (D.D.C. 2018). Because the Plaintiffs did not provide documents to support this award, the Court denies it without prejudice. The Plaintiffs may submit additional evidence to support this request for damages.

### 4.     Attorney's Fees

Finally, the Plaintiffs seek attorney's fees and costs, *see* Mot. Default J. at 21, but they do not provide any accounting or supporting documentation. The Court cannot award attorney's fees and costs in a vacuum. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("The party seeking an award of [attorney's] fees should submit evidence supporting the hours worked and rates claimed."). The Plaintiffs are again free to submit information for the Court's consideration.

## CONCLUSION

For the foregoing reasons, the Court grants in part the Plaintiffs' Motion for Default Judgment, ECF No. 6, and awards the Plaintiffs $219,200.12 in compensatory damages.

A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:   March 24, 2025